**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WESLEY WILLIAMS,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DEPUTY SHERIFF** | : | |
| **LONNIE LANE, et al.,** | : | |
| **Defendants** | : | **NO. 01-03396** |

### MEMORANDUM AND ORDER

PRATTER, DISTRICT JUDGE                                          MARCH 7, 2007

        *Pro se* Plaintiff Wesley Williams sued John Green, Sheriff of the City of Philadelphia,

and Deputy Sheriff Lonnie Lane[1] pursuant to 42 U.S.C. § 1983, alleging that while Mr. Williams

was in his custody, Deputy Sheriff Lane assaulted Mr. Williams in violation of the Eighth and

Fourteenth Amendments to the Constitution.  Mr. Williams alleges that this assault occurred in

part because of Sheriff Green's failure to properly train deputy sheriffs and his failure to

adequately supervise Deputy Sheriff Lane in particular.

        Following a lengthy period of discovery, Sheriff Green now moves for summary

judgment, which Mr. Williams opposes.[2]  Because the record fails to show any causal nexus

---

        [1] Defendants City of Philadelphia and County Commissioner "John Doe" were dismissed
with prejudice by Order of April 18, 2005.  Defendant Sheriff "John Doe" was dismissed with
prejudice by Order of June 7, 2005.

        [2] *Pro se* litigants such as Mr. Williams are held to "less stringent standards" than trained
counsel, Haines v. Kerner, 404 U.S. 519, 520 (1972), and the Court "will apply the applicable
law, irrespective of whether the *pro se* litigant has mentioned it by name," Dluhos v. Strasberg,
321 F.3d 365, 369 (3d Cir. 2003) (citing Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002)).
Nonetheless, and even though "district courts are counseled to liberally construe *pro se*
pleadings, all parties must follow the Federal Rules of Civil Procedure."  Thomas v. Norris, 2006
WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006); see also Zilich v. Lucht, 981 F.2d 694, 696 (3d Cir.

between any conduct of Sheriff Green or any policies, procedures or failure to train and Mr.

Williams's alleged injury, the Court will grant summary judgment in favor of Sheriff Green,

leaving Mr. Williams's claim against Deputy Sheriff Lane to proceed to trial.

**BACKGROUND**

  The following facts are uncontested.[3]

  Following the conclusion of a preliminary hearing on April 19, 2000 at the Criminal

Justice Center in Philadelphia, Deputy Sheriff Lane allegedly assaulted[4] Mr. Williams in the

holding cell area.  (Def. Statement of Uncontested Facts ¶¶ 1, 2.)  Mr. Williams was taken to

---

1992) (noting that despite liberal construction of the complaint, *pro se* plaintiff "still has before him the formidable task of avoiding summary judgment by producing evidence 'such that a reasonable jury could return a verdict for [him],'") (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)).

  The Court attempted to appoint counsel for Mr. Williams by Order of October 14, 2004 (Docket No. 36), but the Clerk of the Court was unable to locate an attorney willing represent Mr. Williams.  According to the Revised Prisoner Civil Rights Panel Program Description, if two attorneys or law firms decline to accept a case after reviewing it thoroughly on the merits, no further requests for representation shall be made by the District Court unless there appears to be exceptional circumstances, such as a plaintiff's serious mental or physical disability.  In this case, two or more law firms or attorneys declined to accept the representation and the two rejections were in accordance with the aforementioned Program Description.  The Court was, and continues to be, unaware of any exceptional circumstances warranting further attempts to appoint counsel.  Consequently, by Order of August 2, 2005, the Court vacated its Order of October 14, 2004 granting Mr. Williams's request for appointment of counsel (Docket No. 53).

  [3] The record consists of the medical report of the physician who treated Mr. Williams immediately after the incident, the Defendants' answers to Mr. Williams's interrogatories, and a portion of Mr. Williams's deposition testimony.  Despite the opportunity to do so, Mr. Williams provided no supplemental evidentiary material to support his opposition to the Motion.

  [4] According to Mr. Williams, Deputy Sheriff Lane "grabbed" him and "threw" or "slammed" him into the adjacent walls.  Deputy Sheriff Lane allegedly then choked Mr. Williams.  Mr. Williams contends the alleged assault was provoked by his failure to walk fast enough when ordered to proceed to the holding cell.  Mr. Williams alleges injuries to his neck, arm, shoulder, ribs and back.

2

Episcopal Hospital, where he was treated for a "muscle strain," meaning a "tear or pull in the muscle."[5]  (April 19, 2000 Report for Wesley Williams; Def. Ex. C, Answer to Pl's Request for Discovery No. 8.)  Both Deputy Sheriff Lane and Deputy Sheriff John McGovern, who was present at the time, prepared and filed incident reports.  (Def. Ex. C, Answer to Pl's Request for Discovery No. 8.)[6]

At all material times, Sheriff Green was Sheriff for the City and County of Philadelphia and, as such, he was responsible for implementing the policies of the Philadelphia Sheriff's Department.  (Def. Statement of Uncontested Facts ¶ 4; Def. Ex. C, Answer to Pl's Request for Discovery No. 4.)  These policies and procedures include a number of "Directives" containing guidelines for the treatment of county prisoners, such as Directive 7 - Handling of Prisoners; Directive 8 - Prisoner Transport; Directive 9 - Detention Unit Security; Directive 10 - Court Security; Directive 11 - Prisoner / Defendant Security; Directive 12 - Courts / Witness Protection; Directive 13 - High Risk Trials; Directive 14 - Prisoner Escapes; Directive 15 - Funeral Details; Directive 16 - Hospital Details; and Directive 17 - Transporting Prisoners and Carrying Firearms Abroad Aircraft.  (Def. Ex. C, Answer to Pl's Request for Discovery No. 1.)  The Sheriff's Department trains deputy sheriffs in courtroom procedures and secured prisoner

---

[5] Although the Court granted Mr. Williams's Motion to Subpoena Medical Records Duces Tecum (Docket No. 56) by Order of August 31, 2005 (Docket No. 58), neither party has submitted any medical records to the Court other than the April 19, 2000 Report of treating physician Dr. Daniel P. Scott, which was attached to Mr. Williams's original Complaint.

[6] Mr. Williams also alleges that Deputy Sheriff Lane then arrested him and charged him with terroristic threats and harassment, the conduct which Deputy Sheriff Lane contends prompted his actions.  According to Mr. Williams, the Municipal Court of Philadelphia County found him not guilty on all counts.  Mr. Williams has not brought a claim for false arrest or false imprisonment.

transportation methods.  (Id. at No. 3.)  Philadelphia deputy sheriffs must successfully meet state-mandated requirements for certification as deputy sheriffs in the Commonwealth of Pennsylvania.  (Id.)  In addition, the Deputy Sheriff's Education and Training Board of the Pennsylvania Commission on Crime and Delinquency prescribes a curriculum for the continued training and development of deputy sheriffs.  (Id. (citing 71 P.S. § 2101 et seq.).)

As of the time of the incident involving Mr. Williams, Deputy Sheriff Lane had never been disciplined for assaultive behavior or for any other violation of the Sheriff's Department policies and procedures.  (Def. Ex. C, Answer to Pl's Request for Discovery No. 9.)  In the three years prior to the incident, no complaints had been filed against Deputy Sheriff Lane for abuse of authority, assault or violation of secured prisoners' rights.  (Id. at No. 2.)

Sheriff Green was not present when the incident giving rise to this suit occurred.  (Def. Ex. B, Williams Dep. 35.)

**LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that

4

demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case," <u>id.</u> at 325, or by offering affirmative evidence which demonstrates that the plaintiff cannot prove his case, <u>Lawrence v. Nat'l Westminster Bank N.J.</u>, 98 F.3d 61, 69 (3d Cir. 1996).  After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The evidence provided by the nonmovant is to be believed, and the court must draw all reasonable and justifiable inferences in the nonmovant's favor.  <u>Anderson</u>, 477 U.S. at 255. However, a nonmovant plaintiff cannot defeat a motion for summary judgment by merely restating the allegations of the complaint, but instead must "point to concrete evidence in the record that supports each and every essential element in his case."  <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 484 (3d Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 322).  Thus, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to survive a summary judgment motion.  <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989) (<u>citing</u> <u>Celotex</u>, 477 U.S. at 325).

The Court of Appeals for the Third Circuit traditionally has given *pro se* litigants "greater leeway where they have not followed the technical rules of pleading and procedure."  <u>Tabron v. Grace</u>, 6 F.3d 147, 153 (3d Cir. 1993).  Due to the "understandable difference in legal sophistication," a *pro se* litigant must be held to a less exacting standard than trained counsel.

5

Haines, 404 U.S. at 520-21.  In the context of summary judgment, the Court of Appeals has recognized that "an inmate who is proceeding pro se, is in a decidedly difficult position from which to generate 'record evidence' on his behalf."  Smith v. Mensinger, 293 F.3d 641, 649 n.4 (3d Cir. 2002) (citing Brooks, 204 F.3d 102, 108 n.7 (3d Cir. 2000)).  However, "while *pro se* complaints are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment."  Ezeiruaku v. United States, No. 00-2225, 2000 WL 1751077, at *3 (E.D. Pa. Nov. 29, 2000) (citing Shabazz v. Odum, 591 F. Supp. 1513, 1515 (M.D. Pa. 1984)).  Thus, notwithstanding giving a *pro se* litigant every opportunity to functionally respond in some meaningful way to a summary judgment motion and the Court's liberal construction of Mr. Williams's submissions as a *pro se* litigant, the same standards for summary judgment still apply.  Agogbua v. Abington Memorial Hospital, No. 03-6897, 2005 WL 1353612, at *3 (E.D. Pa. May 31, 2005); see also Tunnell v. Wiley, 514 F.2d 971, 976 (3d Cir. 1975) ("Where th[e] opportunity to supplement the record is ignored, summary judgment for the movant who has carried his burden of proof is appropriate.") (citing, inter alia, First National Bank v. Cities Service Co., 391 U.S. 253 (1968); Tripoli Co., Inc. v. Wella Corp., 425 F.2d 932 (3d Cir. 1970)).

**DISCUSSION**

It is uncontested that Sheriff Green was neither present when the alleged assault occurred nor personally involved in any way.  (See Def. Ex. B, Williams Dep. 35.)  Consequently, Sheriff Green may only be held liable in his supervisory capacity.  The Court of Appeals for the Third Circuit has set forth the narrow circumstances where a supervisory official may be held liable for the actions of subordinate officers.

Liability under Section 1983 cannot be imposed vicariously or pursuant to *respondeat*

6

*superior*.  City of Canton v. Harris, 489 U.S. 378, 385 (1989); Hampton v. Holmesburg Prisons

Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).  Rather, a supervisor may be personally liable

under Section 1983 if he participated in violating the plaintiff's rights, directed others to violate

them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's

violation.  A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center, 372 F.3d 572, 586

(3d Cir. 2004) (citing Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

Alternatively, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is

shown that such defendants, 'with deliberate indifference to the consequences, established and

maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  Id.

(citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).

       Specifically, in order to render a supervisor such as Sheriff Green liable for the

constitutional violations of a subordinate under  Section 1983, the plaintiff must "(1) identify the

specific supervisory practice or procedure that the supervisor failed to employ, and show that (2)

the existing practice and procedure without the identified, absent one created an unreasonable

risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4)

the supervisor was indifferent to the risk, and (5) the underling's violation resulted from the

supervisor's failure to employ that supervisory practice and procedure."  Johnson v. Anhorn, 416

F. Supp. 2d 338, 379 (E.D. Pa. 2006) (citing Brown v. Muhlenberg Township, 269 F.3d 205, 216

(3d Cir. 2001)).

       Mr. Williams asserts that Sheriff Green is potentially liable for Deputy Sheriff Lane's

alleged assault under three theories of liability.  First, Mr. Williams alleges that Sheriff Green

"knew or should have known" of Deputy Sheriff Lane's "radical behavior."  (Amended

Complaint ¶ 6.)  Second, although Sheriff Green knew about Mr. Williams's complaint against Deputy Sheriff Lane, according to Mr. Williams, he intentionally prevented a "just resolution" of the matter and failed to take action against Deputy Sheriff Lane.  (Id. at ¶¶ 10, 11, 12.)  Finally, Mr. Williams seeks to hold Sheriff Green liable pursuant to a failure-to-train theory.

For his part, Sheriff Green seeks summary judgment on the grounds that Mr. Williams has failed to adduce any evidence demonstrating (1) that Sheriff Green actually was aware of the incident, (2) that he knew or should have known that Deputy Sheriff Lane posed a risk of harm to Mr. Williams, and/or (3) that he inadequately trained deputy sheriffs, and that this alleged lack of training was a substantial factor in causing Mr. Williams's injuries.

### 1.    Sheriff Green's Knowledge of and Response to the Incident

Although it is undisputed that Sheriff Green did not witness the incident (Def. Ex. B, Williams Dep. 35), the evidence in the record suggests that Sheriff Green likely was aware that an incident had occurred (see Def. Ex. C, Answer to Pl's Request for Discovery No. 8).  There is nothing in the record, however, that indicates if or how Sheriff Green responded.  This potentially raises the inference that Sheriff Green did not take action to investigate Mr. Williams's allegations or, if appropriate, impose appropriate disciplinary action.  Without more, however, this is insufficient to raise a genuine issue as to whether Sheriff Green's conduct is causally linked to the incident, or whether there was a policy or practice in place of ignoring allegations of such conduct and thereby indirectly condoning, if not encouraging, it.  This inferential reasoning requires far too long a chain of hypothetical scenarios and relies on inferences barely suggested, much less supported, by the record to defeat the Motion which is supported by record evidence.

2.      **Sheriff Green's Knowledge of Deputy Sheriff Lane's Propensity, if Any, for Violence**

It is uncontested that at the time of the incident, Deputy Sheriff Lane had never been disciplined for assault or for any other violation of Sheriff's Department policies and procedures. (Def. Ex. C, Answer to Pl's Request for Discovery No. 9.)  It is also uncontested that during the three years prior to the incident, no complaints had been filed against Deputy Sheriff Lane for abuse of authority, assault or violation of prisoners' rights.  (Id. at No. 2.)  This evidence is sufficient to demonstrate the absence of a genuine issue of fact as to whether Sheriff Green knew or should have known that Deputy Sheriff Lane had any propensity demonstrated before the fact to pose any risk to prisoners in his custody.  Mr. Williams has failed to point to any evidence at all in record indicating that Deputy Sheriff Lane had any history of or propensity for violent behavior that would or should have given Sheriff Green notice of a risk of harm to prisoners in Deputy Sheriff Lane's custody.  Cf. A.M. ex rel. J.M.K., 372 F.3d at 586 (reversing grant of summary judgment in favor of supervisors because incident reports prepared by subordinates, which provided notice to supervisors that plaintiff was being assaulted by other residents, and supervisors' failure to take action to protect him were sufficient to present a genuine issue of material fact as to supervisors' knowledge of and acquiescence in the conduct of their subordinates).

3.      **Sheriff Green's Alleged Failure to Train Deputy Sheriffs**

Mr. Williams contends that Sheriff Green failed to train deputy sheriffs to "conduct themselves in a professional manner" and did a "poor job" of training deputy sheriffs with respect to the treatment of inmates in their custody.  (Amended Complaint ¶¶ 6, 7, 13.)  Mr.

9

Williams concludes that this alleged failure to prevent by appropriate training the physical abuse of prisoners led to Deputy Sheriff Lane's violation of Mr. Williams's rights.  (Id. at ¶ 13(b).)

Although supervisory officials are not liable for the actions of subordinates under any theory of vicarious liability, Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 263 (3rd Cir.1995), superceded on other grounds, (citing Monell v. Dept. of Social Servs., 436 U.S. 658, 691 (1978)), a supervising authority may be liable under Section 1983 for failing to train subordinates when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the subordinate officers may come into contact, Gilles v. Davis, 427 F.3d 197, 207 (3d Cir. 2005).  To establish liability, however, the plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  Id. (quoting Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997)).

Thus, the plaintiff "must demonstrate that the failure to provide that specific training can reasonably be said to reflect deliberate indifference to or tacit authorization of offending acts." Okocci v. Klein, 270 F. Supp. 2d 603, 612 (E.D. Pa. 2003) (citing Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996).  To establish deliberate indifference, the plaintiff "must show that the supervisor had notice that training procedures and supervision were inadequate and were likely to result in constitutional violation.  Id. (citing Belcher v. City of Foley, 30 F.3d 1390, 1395-6 (11th Cir.1994); Andrews, 98 F.3d at 1078).  However, the mere assertion "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did" is insufficient to establish liability.  Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.

10

1989).

In <u>Sample</u>, the court of appeals concluded the Commissioner of Corrections could not be held liable based on supervisory liability "absent an identification by [the plaintiff] of a specific supervisory practice or procedure that [the Commissioner] failed to employ." <u>Sample</u>, 885 F.2d at 1118. Specifically, the court declined to impose supervisory liability absent "specific findings by the district court that (1) the existing custom and practice without that specific practice or procedure created an unreasonable risk of prison overstays, (2) [the Commissioner] was aware that this unreasonable risk existed, (3) [the Commissioner] was indifferent to that risk, and (4) [the senior records official's] failure to assure that [the plaintiff's] complaint received meaningful consideration resulted from [the Commissioner's] failure to employ that supervisory practice or procedure." <u>Id.</u> The plaintiff's failure to make such an identification precluded supervisory liability. <u>Id.</u> In remanding the case, the court of appeals advised that the "district court must insist that [the plaintiff] identify specifically what it is that [the Commissioner] failed to do that evidences his deliberate indifference. Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" <u>Id.</u>

Here, the uncontested evidence demonstrates that, while under the leadership of Sheriff Green, the Philadelphia Sheriff's Department had in place a number of policies and procedures for the treatment of county prisoners. (<u>See</u> Def. Statement of Uncontested Facts ¶ 4; Def. Ex. C, Answer to Pl's Request for Discovery No. 4.) It is also uncontested that the Sheriff's Department trains deputy sheriffs in courtroom procedures and secured prisoner transportation methods,

11

including the curriculum for continued training and development prescribed by the Deputy

Sheriff's Education and Training Board of the Pennsylvania Commission on Crime and

Delinquency.  (Id. at No. 3.)  In addition, Philadelphia deputy sheriffs must successfully meet

state-mandated requirements for certification as deputy sheriffs in the Commonwealth of

Pennsylvania.  (Id.)  Thus, Sheriff Green has met his initial burden of demonstrating the absence

of evidence to support Mr. Williams's failure to train theory.

Alleging that Sheriff Green's "policy" permitted Deputy Sheriff Lane to serve "without

first passing the training course" and "without checking whether Lane was accredited with his

follow-up and continuing training," Mr. Williams contends that a genuine issue of fact remains

as to whether Sheriff Green failed to properly train deputy sheriffs.  (Pl. Response 2-4.)  Nothing

in the record indicates one way or the other whether Deputy Sheriff Lane successfully completed

the training courses, or whether Sheriff Green required and ensured that all deputy sheriffs

successfully complete the initial and on-going training programs.  Even assuming the truth of Mr.

Williams's allegations, and even assuming further that there may be evidence to support the

allegations, however, nothing in the record remotely suggests a causal nexus between "the

identified deficiency in the city's training program" and "the ultimate injury," as required to

prevail on a failure-to-train theory.  See City of Canton, 489 U.S. at 390-91; Sample, 885 F.2d at

1118.

Mr. Williams further asserts, but without any reference to any evidence or arguable

evidence, that the Sheriff's Department policies "exempted defendants all from express and

imputed duties to avoid violating the rights of others."  (Pl. Response 2.)  Unsubstantiated beliefs

or suspicions alone, however, cannot suffice to persuade a rational trier of fact that the Sheriff

Green, by virtue of his policies, procedures or training program, *caused* Mr. Williams's alleged injury.   See City of Canton, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."); see also Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990) (noting that an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment).  On this record, Mr. Williams's beliefs and suspicions are not borne out by any facts, disputed or otherwise, presented or suggested to the Court.

**CONCLUSION**

Therefore, because Mr. Williams has failed to raise a genuine issue of fact as to whether a causal connection exists between any policies, procedures or failure to train attributable to Sheriff Green and Plaintiff's injuries, the Court will grant summary judgment in favor of Sheriff Green.  An Order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


WESLEY WILLIAMS,                    :          CIVIL ACTION
          Plaintiff,              :
                           :
    v.                              :
                           :
DEPUTY SHERIFF                      :
LONNIE LANE, et al.,                :
          Defendants               :          NO.  01-03396


## <u>ORDER</u>


       AND NOW, this 7th day of March, 2007, upon consideration of Defendant Sheriff John

Green's Second Motion for Summary Judgment (Docket No. 73) and the Plaintiff's Response in

opposition thereto (Docket No. 76), it is hereby ORDERED that the Motion is GRANTED.



                                              BY THE COURT:



                                              <u>S/Gene E.K. Pratter</u>
                                              GENE E.K. PRATTER
                                              UNITED STATES DISTRICT JUDGE